IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| NICOLE HINE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,;<br><br>Plaintiff,<br><br>vs.<br><br>LENDINGCLUB CORPORATION,<br><br>Defendant, | 2:22-CV-00362-CRE |

**MEMORANDUM AND ORDER**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

**I.    INTRODUCTION**

This civil action was initiated in the Court of Common Pleas of Westmoreland County, Pennsylvania and removed to this Court by Defendant LendingClub Corporation ("LendingClub"). In this action, Plaintiff Nicole Hine alleges that LendingClub violated the Pennsylvania Loan Interest and Protection Law, 41 Pa. Stat. Ann. § 101 *et seq*. ("LIPL"), the Pennsylvania Consumer Discount Company Act, 7 Pa. Stat. Ann. § 6201, *et seq*. ("CDCA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201 *et seq*., when it allegedly charged an impermissibly high simple annual interest rate on Plaintiff's loan. Plaintiff seeks class treatment of her claims.

---

[1] Motions to compel arbitration are non-dispositive motions under 28 U.S.C. § 636(b). *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014) ("motions to compel arbitration and stay the proceedings" are not dispositive motions and there is "no exercise of Article III power when a Magistrate Judge rules on a motion to compel arbitration.").

Presently before the Court is a renewed motion to compel arbitration by LendingClub pursuant to Federal Rule of Civil Procedure 56. (ECF No. 25). The motion is fully briefed and ripe for consideration. (ECF Nos. 26, 31, 34, 38). For the reasons that follow, LendingClub's motion to compel arbitration is granted.

## II. BACKGROUND

### LendingClub's Operations

LendingClub operates an online lending platform through which it accepts loan applications. Compl. (ECF No. 1-1) at ¶¶ 16-17. After LendingClub evaluates a consumer's creditworthiness and makes an offer, it requests WebBank to issue the loan to the consumer. *Id*. at ¶ 18. Thereafter, WebBank sells the loan to LendingClub or one of its non-bank entities that LendingClub controls. *Id*. at ¶ 19. The loans issued through LendingClub's online platform are simple interest loans and most if not all the loans are high interest, with interest rates reaching up to 36% simple interest per year. *Id*. at ¶¶ 20-21. The loans also include an origination fee, which is generally a percentage of the loan's principal balance. *Id*. at ¶ 22. Origination fees are often in the hundreds to thousands of dollars. *Id*. at ¶ 23. When consumers default on a loan, LendingClub sells the loan to a debt buyer and by doing so, Plaintiff alleges that LendingClub can turn a profit even when consumers are unable to pay the high interest rates and origination fees that LendingClub charges. *Id*. at ¶¶ 24-25. When LendingClub sells a loan, it sells all rights, title and interest in and to the loans to the debt purchaser. *Id*. at ¶ 26.

### Plaintiff's LendingClub Loan

In June 2015, LendingClub issued a personal loan to Plaintiff that was used for personal, family and/or household purposes. *Id*. at ¶¶ 27-28. The loan was issued in the amount of $16,000, but Plaintiff only received $15,200.00 of actual money because LendingClub charged and deducted an $800.00 "origination fee." *Id*. at ¶¶ 29-30. Plaintiff was also charged interest on the

loan and the interest and fees were charged at an annual percentage rate of close to 19%. *Id*. at ¶¶ 31-32. Plaintiff made payments on the loan, and at a certain point the loan was charged-off. *Id*. at ¶¶ 33-34. After the loan was charged-off, LendingClub allegedly sold all rights and interests in the loan to a debt buyer, called Oliphant Financial, LLC ("Oliphant"). *Id*. at ¶ 35. After buying the loan, Oliphant attempted to collect the loan by suing Plaintiff in Westmoreland County Court of Common Pleas. *Id*. at ¶ 36. Plaintiff hired an attorney to defend the lawsuit and eventually Oliphant dismissed its case with prejudice. *Id*. at ¶¶ 36-37.

### Plaintiff's Claims against LendingClub and Procedural History

Plaintiff contends that LendingClub and its non-bank designees are non-banks without CDCA licenses and as such, it is not authorized under any law to charge interest above the LIPL's 6% interest rate cap on any loan for which LendingClub seeks to charge interest on behalf of itself or its non-bank designees. *Id*. at ¶¶ 39-40. Plaintiff maintains that the CDCA prohibits LendingClub from charging, collecting, contracting for, or receiving interest and fees that aggregate in excess of 6% simple interest per year, yet it routinely issues loans with interest and fees that aggregate in excess of 6% simple interest per year and it charges, collects, contracts for, or received such interest and fees from Pennsylvania consumers. *Id*. at ¶¶ 41-42. Plaintiff alleges that LendingClub cannot charge, collect, contract for, or receive most of the interest and fees it charges, collects, contracts for, or received because LendingClub and its non-bank designees do not have the license to do so and that LendingClub partners with WebBank in an attempt to circumvent the CDCA and the LIPL. *Id*. at ¶¶ 43-44. Plaintiff maintains that although banks like WebBank may lawfully charge interest and fees at the rates and amounts charges on LendingClub's loans, LendingClub cannot take advantage of the rights granted to banks once a loan is sold, WebBank is not the true lender of the loans at issue because the loans are not made by a bank and the LendingClub/WebBank partnership is an attempt to evade Pennsylvania law. *Id*.

at ¶¶ 45-47.  Plaintiff alleges that these actions make loans more expensive, increase the risk of default and make the consequences of default much worse and by example, she paid more than she would have paid had LendingClub charged interest and fees at the lawful rates and amounts, her monthly payments would have been much less making it easier for her to repay the loan and decreasing the chance of her default. *Id.* at ¶¶ 48-55.

Plaintiff seeks class treatment of her claims and seeks to certify the following class: "All persons who obtained a loan from LendingClub with a Westmoreland County address and paid interest and fees that aggregated in excess of 6% simple interest per year within the applicable statute of limitations." *Id.* at ¶ 58.

Plaintiff asserts the following claims against LendingClub:

1. A violation of the LIPL (Count I);

2. A violation of the CDCA (Count II); and

3. A violation of the UTPCPL (Count III).

LendingClub filed a motion to compel arbitration of Plaintiff's claims based upon arbitration provisions in the Borrower Membership Agreement and Loan Agreement.  The Court denied the motion without prejudice and ordered the parties to conduct limited discovery as to the arbitrability of Plaintiff's claims and allowed LendingClub to renew its motion to compel arbitration, which, after a period of discovery, it did.

## Arbitration Agreement

LendingClub moves to compel arbitration of Plaintiff Hine's claims and argues that her loan is subject to an arbitration agreement.

For Plaintiff to obtain her loan, as part of the LendingClub online loan application, she was required to electronically sign and agree to a Borrower Membership Agreement with LendingClub and a Loan Agreement with WebBank (collectively the "Agreements"). Dec. of Paul Strack

4

("Strack Dec.") (ECF No. 26-1) at ¶¶ 11, 15-17.  As set forth in the image below, on the Truth in Lending Disclosure Statement ("TIL Disclosure") Plaintiff had to select a box that stated "Clicking the box constitutes your electronic signature and acceptance" of four documents, including the Borrower Membership Agreement and Loan Agreement (the "electronic signature and acceptance of agreements box").



The four documents, including the Loan Agreement and Borrower Membership Agreement were not explicitly set forth in the Disclosure, but were contained in hyperlinks that required Plaintiff to click open to review any of the terms thereto.  After Plaintiff selected electronic signature and acceptance of agreements box, she had to further select the "Confirm" button.  It is

undisputed that if Plaintiff had not selected the box and selected the "Confirm" button, she would not have been able to obtain the loan.

The Borrower Membership Agreement[2] and Loan Agreement were accessible to Plaintiff through green hyperlinks on the TIL Disclosure which included the following arbitration provision:

> **17. Arbitration.** RESOLUTION OF DISPUTES: I HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I UNDERSTAND THAT I HAVE THE RIGHT TO REJCT THIS PROVISION AS PROVIDED IN PARAGRAPH (B) BELOW.
>
> a. Either party to this Agreement, or LendingClub, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 18 (the "Arbitration Provision"), unless you opt out as provided in section 18(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or WBK (or persons claiming through or connected with us and/or WBK), on the other hand, relating to or arising out of this Agreement, any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 18(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.
>
> b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to WebBank, c/o LendingClub Corporation 71 Stevenson St., Suite 300, San Francisco CA, 94105, Attention: Loan Processing Department, which is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. . . .

---

[2] The arbitration provision of the Borrower Membership Agreement is identical to the provision of the Loan Agreement with the exception that it refers to WebBank, instead of LendingClub, as the party to the agreement. *See* Borrower Membership Agreement § 18 (ECF No. 26-1 at pp. 13-14).

\* \* \*

f. . . . NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS A PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS A CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. . . .

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. . . .

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or WBK; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Note or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision other than section 18(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 18(f) are finally adjudicated pursuant to the last sentence of section 18(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

Loan Agreement § 17 (ECF No. 26-1 at pp. 26-27).

While the arbitration provisions allowed Plaintiff to opt out of the provision within thirty days of the Agreements, it is undisputed that Plaintiff did not do so. Additionally, the arbitration provisions expressly exclude arbitration of a class.

Plaintiff maintains that she did not view the hyperlinked documents, including the Loan Agreement and Borrower Membership Agreement, included in the TIL Disclosure Statement and did not have reasonable notice of the arbitration provisions.

### III.   STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 522 (3d Cir. 2009).

A motion to compel arbitration is decided under the motion for summary judgment standard when "the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement." Robert D. Mabe, Inc. v. OptumRX, 43 F.4th 307, 325 (3d Cir. 2022) (citations and internal quotation marks omitted). As it has been previously determined that the motion to compel arbitration required a period of discovery, and the parties have conducted limited discovery on the arbitration issue, Federal Rule of Civil Procedure 56 provides the applicable standard. *Id*.

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

## IV.   DISCUSSION

LendingClub argues that Plaintiff is obligated to arbitrate her claims arising from the loan because the arbitration provisions meet all the necessary requirements for the FAA to apply to the dispute, including that the transaction involved interstate commerce, that a written, valid, and enforceable arbitration agreement exists, and that Plaintiff's claim is within the scope of the arbitration provision.

Plaintiff responds that she was not provided reasonable notice of the agreement to arbitrate her claims because the arbitration provision was never displayed to Plaintiff as it was hidden in hyperlinks in the TIL Disclosure and LendingClub constructed its website that leads reasonable consumers to believe that there are no material terms, like arbitration clauses, hidden in the hyperlinks.

> The FAA provides
>
> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such ground as exist at law or in equity for the revocation of any contract or as otherwise provided [herein].

9 U.S.C. § 2. Because Plaintiff argues that the arbitration provision is unenforceable for a lack of reasonable notice, only that argument will be addressed herein. The parties both apply Pennsylvania law in their briefs.[3]

---

[3]   While the parties cite to Pennsylvania contract law in their briefs, the Agreements contained a Delaware choice of law provision. Delaware law is not in conflict with the laws of Pennsylvania on the arbitrability of clickwrap agreements. Therefore, the Court need not make a choice of law determination and will apply the law of Pennsylvania – the forum state, which is consistent with the parties' submissions. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) (under Pennsylvania choice of law principals, "[i]f there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply."). See *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *5 (D.N.J. Dec. 29, 2022) (under "Delaware law, online agreements are enforceable if there exists: (1) reasonable notice of the terms; and (2) manifestation of assent to those terms."); *Geraci v. Uber Techs., Inc.*, No. CV

10

The arbitration provision here was contained in a "clickwrap agreement" which is an agreement that "appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Liptak v. Accelerated Inventory Mgmt., LLC*, No. 2:20-CV-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021) (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)). "[A] web-based agreement to arbitrate [may] exist[] where notice of the agreement [is] 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.' " *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)). In other words, "[t]o determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principals of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement." *Pricharda v. Checkr, Inc.*, No. 5:22-CV-3180, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022) (citation omitted).

"[T]he occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the merchant's terms of service agreement." *Dobbs v. Health IQ Ins. Servs., Inc.*, No. CV 21-5276, 2022 WL 2974713 at *3 (E.D. Pa. July 27, 2022) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). A true "meeting of the minds" is not necessary to form a contract under a clickwrap agreement, *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584

---

N21C-07-151 CLS, 2021 WL 5028368, at *2 (Del. Super. Ct. Oct. 29, 2021) (finding an arbitration provision contained in a clickwrap agreement was enforceable where plaintiff clicked "YES, I AGREE" to the terms of the agreement to create an account and continue to use such account); *Doe v. Massage Envy Franchising, LLC*, No. CV S20C-05-005RFS, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) ("Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law"); *Land of Land, Inc. v. PayPal, Inc.*, No. 122CV00261NLHEAP, 2023 WL 2583597, at *4 (D.N.J. Mar. 21, 2023) (applying Delaware law and upholding an arbitration agreement contained in a clickwrap agreement).

11

F.3d 575, 582 (3d Cir. 2009), and "an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016) (citation omitted).

"To be reasonably conspicuous, a 'notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.' " *Checchia v. SoLo Funds*, No. CV 23-444-KSM, 2023 WL 3868369, at *9 (E.D. Pa. June 7, 2023) (quoting Berman, 30 F.4th at 856). "[W]hile it is permissible to disclose terms and conditions in a hyperlink, the fact that a hyperlink is present must be readily apparent." Berman, 30 F.4th at 856. These requirements have been met here.

The Agreements containing the arbitration clause were included in a clickwrap agreement. While Plaintiff maintains she does not remember clicking the electronic signature and acceptance of agreements box or reading the Loan Agreement or Borrower Membership Agreement that contained the arbitration provisions, it is undisputed that Plaintiff would not have been able to obtain the loan without selecting the electronic signature box and selecting the "Confirm" button. Moreover, because Plaintiff does not have to actually read the terms and conditions or click on the hyperlink containing the Agreements to be bound by the terms therein, mutual assent exists here.

Likewise, despite Plaintiff's contention that the website actively misleads consumers into believing material terms did not exist outside of the TIL Disclosure, the Court finds that Agreements were reasonably conspicuous such that a reasonably prudent Internet user would have seen them. At the top of the webpage, the first text states: "Please scroll down to review the terms of your loan in the Truth in Lending disclosure and provide your consent to the agreements below." The TIL Disclosure is an embedded box on the webpage with a light gray background, indicating it is separate from the electronic signature and acceptance of agreements box which is below the

TIL Disclosure. A reasonably prudent user would understand that the TIL Disclosure was separate from the "consent to the agreements below" and the "consent to the agreements below" referred to the electronic signature and acceptance of agreements box.

Before being able to click the "Confirm" button, Plaintiff needed to check the electronic signature and acceptance of agreements box, which specifically stated that she was affixing her signature and accepting the Loan Agreement and Borrower Membership Agreement. The terms "Loan Agreement and Borrower Membership Agreement" were hyperlinked in green font in the electronic signature checkbox, whereas the rest of the text on the webpage is in black font. The hyperlinked Loan Agreement and Borrower Membership Agreement are in immediate proximity to the electronic signature checkbox. Immediately below the electronic signature and acceptance of agreements box is the "Confirm" button, which is also contained in a green box with white font, indicating text in green font were hyperlinks a user could select. While the Loan Agreement and Borrower Membership Agreement hyperlinks are not underlined or in bold font, it would be readily apparent to a reasonably prudent Internet user that distinct green font used for document descriptions like "Loan Agreement" and "Borrower Membership Agreement" while all other surrounding text is in black font would contain hyperlinks. *See Liptak*, 2021 WL 650514, at *1 (finding that a borrower agreement not visible on the webpage but available through an un-underlined green hyperlink was reasonably conspicuous to enforce arbitration agreement contained in the hyperlinked documents). In other words, the Loan Agreement and Borrower Membership Agreement hyperlinks were sufficiently "set apart" from the surrounding text so that a reasonable user would have seen the Agreements and recognized they were hyperlinked. Therefore, the hyperlinks were readily apparent such that disclosing the arbitration provisions

13

through the documents contained in the hyperlink was proper and Plaintiff is bound by the arbitration agreement.

Accordingly, the following Order is entered:

AND NOW, this 22nd day of November, 2023,

Upon consideration of LendingClub's renewed Motion to Compel Arbitration (ECF No. 25), it is HEREBY ORDERED that said motion is GRANTED. This matter is hereby referred for individual arbitration, and the matter is STAYED pending the outcome of such proceedings.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge